# RUDIKH & ASSOCIATES, LLC

Attorneys at Law
14 Woodward Drive
Old Bridge, NJ 08857
www.rudikhlaw.com

(732) 659-6961 Tel.
(732) 520-6422 Fax

*Yakov (Yan) Rudikh, Esq.*   Δ
*Zlata Rudikh, Esq.*   Δ
*Harry Shlyonsky, Esq.*   Δ

Δ   Licensed in New Jersey

March 19, 2026

*Via Electronic Filing*
The Honorable Vincent F. Papalia
50 Walnut Street
Newark, NJ 07102

> RE:   Case Number:      25-18358
>        Debtor:           Abigail A. Rodney

Judge Papalia :

Please accept this letter brief in lieu of a more formal brief in this matter.

The relevant procedural history is straightforward. The debtor filed the initial bankruptcy petition on **August 8, 2025**. The **bar date for filing proofs of claim was October 17, 2025**. The case was subsequently **dismissed on November 3, 2025**. Therefore, the dismissal occurred **after the proof-of-claim bar date had already expired**.

The creditor has acknowledged in its certification that it received proper notice of the bankruptcy filing. A bankruptcy notice was sent directly to the creditor's office, and at the February 19 hearing the creditor admitted that the addresses listed on the bankruptcy notices were correct. The creditor further acknowledged that its office was undergoing internal personnel changes at the time the certain employees had recently been terminated, which may have resulted in the failure to timely file a proof of claim.  However, those internal administrative issues do not excuse compliance with the Bankruptcy Rules.

Under Federal Rule of Bankruptcy Procedure 3002(c), a creditor in a Chapter 13 case must file a proof of claim **within 70 days after the order for relief**, unless one of the specifically enumerated exceptions applies. None of the exceptions contained in Rule 3002(c) apply in this case.

Moreover, **Federal Rule of Bankruptcy Procedure 9006(b)(3)** expressly limits the Court's ability to enlarge the time for filing proofs of claim. The rule provides that the Court may

enlarge the time to act under Rule 3002(c) only to the extent and under the conditions stated in that rule itself. Thus, the Court does not possess general equitable authority to extend the proof-of-claim deadline beyond the narrow exceptions expressly listed in Rule 3002(c).

The Supreme Court has made clear that bankruptcy courts cannot rely on equitable principles to override explicit provisions of the Bankruptcy Code or the Bankruptcy Rules. See **Law v. Siegel**, 571 U.S. 415 (2014), where the Court held that a bankruptcy court's equitable powers under §105(a) cannot be used to contravene specific statutory or rule-based limitations.

Courts within the Third Circuit similarly recognize that procedural deadlines established by the Bankruptcy Rules must be strictly enforced. In **In re Mansaray-Ruffin**, 530 F.3d 230 (3d Cir. 2008), the Third Circuit emphasized that creditors and parties in bankruptcy proceedings are entitled to rely on the procedural protections and deadlines established by the Bankruptcy Rules, and that those rules cannot be disregarded through equitable considerations.

The Supreme Court has also recognized that bar dates in bankruptcy serve a critical function in ensuring finality and orderly administration of the estate. In **United Student Aid Funds, Inc. v. Espinosa**, 559 U.S. 260 (2010), the Court reiterated the importance of procedural compliance within bankruptcy proceedings and emphasized that parties who receive proper notice must timely assert their rights.

Here, the creditor had proper notice and a full opportunity to file a proof of claim before the October 17, 2025 bar date but failed to do so. The creditor admits that the addresses were correct and that notice was received. The explanation offered—that the creditor's office was undergoing personnel and structural changes—is an internal administrative matter and does not fall within any exception provided under Rule 3002(c).

Additionally, the Order Vacating the Dismissal, **Exhibit "A"** entered on **January 21, 2026**, states that deadlines that were **unexpired at the time of dismissal** would be nullified and reset. The proof-of-claim deadline had already **expired on October 17, 2025**, well before the case was dismissed on November 3, 2025. Accordingly, there **was** no unexpired deadline to reset. The creditor is effectively requesting a second opportunity to file a proof of claim that it failed to timely file despite proper notice. The Bankruptcy Rules do not permit such relief.

The Court should also consider the nature of the underlying loan at issue. The documents produced indicate that the debtor is being charged **interest approaching 36%, "Exhibit B"**, a rate that raises serious concerns regarding the fairness of the lending arrangement. Courts within the Third Circuit have recognized that contracts containing extremely oppressive financial terms may be deemed **unconscionable** where the agreement reflects both unfair bargaining power and terms that are unreasonably favorable to one party. See **Alexander v. Anthony International, L.P.**, 341 F.3d 256 (3d Cir. 2003), where the court explained that unconscionability may exist when there is both **procedural unfairness in the formation of the agreement and substantive terms that are excessively one-sided**.

Similarly, the Third Circuit has recognized that courts must scrutinize agreements where one party is subjected to terms that "shock the conscience" or impose disproportionately harsh

financial obligations. See **Harris v. Green Tree Financial Corp.**, 183 F.3d 173 (3d Cir. 1999), noting that unconscionability arises where contractual provisions are so one-sided that enforcement would be fundamentally unfair. An interest rate approaching **36%**, particularly when imposed on a financially distressed borrower, raises precisely the type of concerns courts have identified as indicators of substantive unconscionability.

While the creditor now seeks equitable relief from this Court due to its own failure to comply with the proof-of-claim deadline, equity should not operate to rescue a creditor who imposed extraordinarily burdensome loan terms and then failed to comply with the clear procedural requirements governing bankruptcy claims. Allowing enforcement of such a claim after the expiration of the bar date would not serve the equitable purposes of the Bankruptcy Code.

For these reasons, the creditor's attempt to assert a claim after the expiration of the bar date should be **denied**.

Thank you for the Court's time and consideration.

Respectfully submitted,

Very truly yours,
**RUDIKH & ASSOCIATES, LLC**

By: _____
        YAN RUDIKH, ESQ.

YR/mm

# " EXHIBIT A"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

**Order Filed on January 21, 2026
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

In Re:

Case No.: _____

Chapter: _____

Judge: _____

**ORDER ON MOTION TO VACATE DISMISSAL OF CASE**

The relief set forth on the following page is hereby **ORDERED**.

**DATED: January 21, 2026**

_____
**Honorable Vincent F. Papalia
United States Bankruptcy Judge**

The debtor having filed a motion to vacate dismissal of case; and the court having considered any objections filed; and for good cause shown; it is

❑ ORDERED that the motion is granted and the order dismissing case is vacated effective on the date of this order. No actions taken during the period this case was dismissed were subject to the automatic stay or other provisions of the Bankruptcy Code;

IT IS FURTHER ORDERED that any deadline unexpired at the time of dismissal is nullified and reset as follows. Creditors and/or parties in interest have:

1.       until the original deadline fixed by the court to file a complaint to object to the debtor's discharge or dischargeability of certain debts, or 60 days from the date of this Order, whichever is later;

2.       until the original deadline fixed by the court to file a proof of claim or required supplement, or 60 days from the date of this Order, whichever is later; and

3.       until the original deadline fixed by the court to object to exemptions, or 30 days from the date of this Order, whichever is later.

IT IS FURTHER ORDERED that if the meeting of creditors has not been concluded, the debtor must contact the case trustee to schedule a new date for the meeting, and must provide 21 days' notice under Bankruptcy Rule 2002(a)(1) of the new date to all creditors and parties in interest.

IT IS FURTHER ORDERED that if this is a chapter 13 case, and the debtor's plan has not been confirmed, the confirmation hearing is rescheduled to _____ at _____.

❑ ORDERED that the motion to vacate order dismissing case is denied.

❑ ORDERED (Other): _____

_____

case will be dismissed again without further notice. _____.

IT IS FURTHER ORDERED that whether the motion is granted or denied, the debtor must, within 3 days of the date of this Order, serve all creditors and parties in interest with a copy of this Order and immediately thereafter file Local Form *Certification of Service* in accordance with D.N.J. LBR 9024-1(b).

*rev. 8/1/2023*

2

# " EXHIBIT B"



**US CLAIMS LOAN AGREEMENT**
**DISCLOSURE STATEMENT**
Dated: 12/26/2024

This disclosure statement (the "Disclosure Statement") summarizes the material terms of the USClaims Loan Agreement (the "Agreement") between Abigail Singletary-Rodney (the "Borrower," "I," or "me"), residing at 671 Elms St, 2nd Floor,New Haven, CT 06511 , and US Claims Connecticut, LLC ("USC"), having its principal place of business at 4850 T-Rex Avenue, Suite 101, Boca Raton, FL 33431.

| Annual Percentage Rate The cost of my credit as a yearly rate under the Agreement. | Finance Charge This is the dollar amount the credit will cost me under the Agreement. | Amount Financed Amount of credit provided to me or on my behalf under the Agreement. | Total of Payments (Total Due) The total amount I will have paid after I make the payments as scheduled below. |
|---|---|---|---|
| 36.00% | $2,500.00 | $2,500.00 | $5,000.00 |

Payment Schedule: My payment schedule will be:

| Number of Payments | Amount of Each Payment | When Payments Are Due (the Installment Due Dates) |
|---|---|---|
| 34 | $147.06 | 34 monthly payments beginning 1/25/2025 |

**Itemization of Amount Financed:**

| | |
|---|---|
| Amount paid to you directly | $2,500.00 |

*If you pay off early, you will not have to pay a penalty and may be entitled to a refund of part of the finance charge. Please see the Agreement for any additional information about nonpayment, default, or any prepayments rebates if I make a payment before the Proceeds of the Litigation are available.

**Litigation:** USC will be paid  from the proceeds expected from the claim(s) arising from an accident/incident occurring on or about 9/22/2024 (the "Litigation" or "Claim") against or involving Frank Stabile  and/or all proper defendants.   The attorney I hired to represent me in the Litigation is Alexander A Glovich, Esquire, of Rudikh & Associates, LLC (my "Attorney"), whose address is 223 Highway 18, Suite 204, East Brunswick, NJ  08816.

**Maturity Date.** This loan will come due and payable the date the Proceeds of the Litigation are paid to me, my Attorney, or a third party on either of our behalf. Upon maturity, I am responsible to pay the Amount Financed and any interest accrued through the end of the corresponding Installment Due Date.

**There are no fees or charges to be paid by me other than what is disclosed on this Disclosure Statement.**

**Insurance:** There are no insurance products offered or sold in connection with the Agreement.

**Maximum Amount Due:** The Total Due that I may be obligated to pay under this Agreement will not exceed: $5,000.00, which is **2.00 times** the Amount Financed (the "Maximum Amount Due").

**This Office is Licensed by The Commissioner of Banking, 260 Constitution Plaza, Hartford, Connecticut 06103**
**USC Claims Connecticut, LLC NMLS #2513033**

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK.]

Borrower's Initials (_____)

## ASSIGNMENT, SALE & LIEN AGREEMENT
**This is not a loan. This is a purchase and sale of property rights .**

### DISCLOSURE STATEMENT
Dated: 1/29/2025

This disclosure statement (the "Disclosure Statement") summarizes the material terms of the Assignment, Sale & Lien Agreement (the "Agreement") between Lance Bunn ("Seller," "I," or "me"), residing at 117 Truman Dr, #203,Edison, NJ 08817 , and US Claims ("USC"), having its principal place of business at 4850 T-Rex Avenue, Suite 101, Boca Raton, FL 33431.

| Annual Percentage Rate[1]<br>This is an estimate of the cost to me of this transaction assuming USC is paid one (1) year from the date of this Agreement. | Finance Charge<br>This is the dollar amount this transaction will cost me, assuming USC is paid one (1) year from the date of the Agreement. | Total Amount Advanced<br>This is equal to the Purchase Price, which is the money advanced by USC under this Agreement. | Total Payment Amount<br>This will vary, depending upon the amount of time that elapses between the date of this Agreement and the date USC is paid after the case is resolved, according to the table below. |
|---|---|---|---|
| 36.00% | $1,009.80 | $2,805.00 | |

### Amount of USC's  Property / Illustrative Payment Schedule

| Date of Payment to USC | Number of Months | Amount of USC 's Property |
|---|---|---|
| Proceeds received after 1/29/2025 but on or before 7/29/2025 | 6 | $3,309.90 |
| Proceeds received after 7/29/2025 but on or before 1/29/2026 | 12 | $3,814.80 |
| Proceeds received after 1/29/2026 but on or before 7/29/2026 | 18 | $4,319.70 |
| Proceeds received after 7/29/2026 but on or before 1/29/2027 | 24 | $4,824.60 |
| Proceeds received after 1/29/2027 but on or before 7/29/2027 | 30 | $5,329.50 |
| Proceeds received after 7/29/2027 but on or before 1/29/2028 | 36 | $5,610.00 |

**Litigation:** USC will be paid  from the proceeds expected from the claim(s) arising from an accident/incident occurring on or about 1/25/2024 (the "Litigation" or "Claim") against or involving Muhammad Daulat  and/or all proper defendants.  The attorney I hired to represent me in the Litigation is Zlata Rudikh, Esquire, of Rudikh & Associates, LLC (my "Attorney"), whose address is 14 Woodward Drive, Old Bridge, NJ 08857.

**Calculation of Total to Pay USC:** 18.00% of the Purchase Price for every  six months, or portion of  six months,  from the date of the Agreement, until the date the interest in the Litigation proceeds that is the subject of the Agreement is delivered to USC. In no event shall the amount due to USC hereunder exceed $5,610.00 , which is **2.00 times** the Purchase Price.

**Compounding Period:  None**

**One-time Charges:** I will pay a processing fee of $200.00 (the "Processing Fee") and a document and filing fee of $105.00 (the "Document & Filing Fee"), which will  be included in the Purchase Price and deducted from the amount to be paid to me at closing.

**BY PUTTING MY INITIALS BELOW, I CERTIFY HAVING READ THIS DISCLOSURE STATEMENT AND THE AGREEMENT. I UNDERSTAND THE TERMS OF THIS TRANSACTION AND THAT I HAVE 5 DAYS TO CANCEL AS PROVIDED IN PARAGRAPH 9 OF THE AGREEMENT.**

---

[1] This is not technically an interest but is being provided for illustrative purposes.

Seller Initials

## US CLAIMS LOAN AGREEMENT
## DISCLOSURE STATEMENT
### (continued)

**Installment Deferral.** The parties agree that, in the event that I do not make the first monthly installment within ten days after it is due, US Claims will unilaterally grant a deferral for all installment payments listed above in this disclosure statement

If the installment payments have been deferred, this is the payment schedule based on the day USC is paid:

| Date USC is Paid | Total Due | Date USC is Paid | Total Due |
|---|---|---|---|
| Between 12/26/2024 and 1/25/2025 | $2,573.97 | Between 6/19/2026 and 7/19/2026 | $3,905.48 |
| Between 1/25/2025 and 2/24/2025 | $2,647.95 | Between 7/19/2026 and 8/18/2026 | $3,979.45 |
| Between 2/24/2025 and 3/26/2025 | $2,721.92 | Between 8/18/2026 and 9/17/2026 | $4,053.42 |
| Between 3/26/2025 and 4/25/2025 | $2,795.89 | Between 9/17/2026 and 10/17/2026 | $4,127.40 |
| Between 4/25/2025 and 5/25/2025 | $2,869.86 | Between 10/17/2026 and 11/16/2026 | $4,201.37 |
| Between 5/25/2025 and 6/24/2025 | $2,943.84 | Between 11/16/2026 and 12/16/2026 | $4,275.34 |
| Between 6/24/2025 and 7/24/2025 | $3,017.81 | Between 12/16/2026 and 1/15/2027 | $4,349.32 |
| Between 7/24/2025 and 8/23/2025 | $3,091.78 | Between 1/15/2027 and 2/14/2027 | $4,423.29 |
| Between 8/23/2025 and 9/22/2025 | $3,165.75 | Between 2/14/2027 and 3/16/2027 | $4,497.26 |
| Between 9/22/2025 and 10/22/2025 | $3,239.73 | Between 3/16/2027 and 4/15/2027 | $4,571.23 |
| Between 10/22/2025 and 11/21/2025 | $3,313.70 | Between 4/15/2027 and 5/15/2027 | $4,645.21 |
| Between 11/21/2025 and 12/21/2025 | $3,387.67 | Between 5/15/2027 and 6/14/2027 | $4,719.18 |
| Between 12/21/2025 and 1/20/2026 | $3,461.64 | Between 6/14/2027 and 7/14/2027 | $4,793.15 |
| Between 1/20/2026 and 2/19/2026 | $3,535.62 | Between 7/14/2027 and 8/13/2027 | $4,867.12 |
| Between 2/19/2026 and 3/21/2026 | $3,609.59 | Between 8/13/2027 and 9/12/2027 | $4,941.10 |
| Between 3/21/2026 and 4/20/2026 | $3,683.56 | Between 9/12/2027 and 10/12/2027 | $5,000.00 |
| Between 4/20/2026 and 5/20/2026 | $3,757.53 | | |
| Between 5/20/2026 and 6/19/2026 | $3,831.51 | | |

See paragraph 1 of the Agreement for details on the calculation of the Total Due. Please call USC or have your attorney call USC before making any payment to find out the exact amount.

*Except as otherwise defined in this Disclosure Statement, all capitalized terms herein shall have the meanings assigned in the Agreement.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK.]

Borrower's Initials (_____)

## US CLAIMS LOAN AGREEMENT

**THIS LOAN AGREEMENT** (the "Agreement") dated as of 12/26/2024, is made between Abigail Singletary-Rodney ("Borrower," "I," or "me"), and US Claims Connecticut, LLC ("USC"). Capitalized terms that are not defined here are defined in the accompanying Disclosure Statement, which is incorporated by reference.

I may be entitled to proceeds resulting from the Litigation in the future, in the form of a verdict, award, settlement, or otherwise. The entire amount of any and all proceeds that could result from the Litigation is called the "Proceeds." At my request, USC has agreed to loan me monies to be repaid from the Proceeds.

**USC AND I AGREE AS FOLLOWS:**

1. **Terms of the Transaction.**
   a. **Loan Terms:** USC agrees to lend me the amount listed in the Disclosure Statement (the "Loan Amount" or "Amount Financed"). If all conditions set below are met, USC shall send me the Loan Amount minus deductions made pursuant to the itemization in the Disclosure Statement.
   b. **What Do I Owe USC?** I promise to pay USC the "Total Due," which equals the sum of (i) the Amount Financed (which includes any payments made on my account identified in the Disclosure Statement), plus (ii) interest at the rate disclosed in the Disclosure Statement per annum on the outstanding balance from now until paid in full (the "Interest"), according to the payment schedule included in the Disclosure Statement. Payment shall be made to USC at the following address (or such other USC may designate and instruct me): US Claims, PO Box 789867, Philadelphia, PA 19178-9867. If I pay more than what is due or make a payment before the due dates listed in the Disclosure Statement, it will be applied to reduce any outstanding fees or charges, then to any outstanding Interest, then to principal. In no event will I be responsible to pay USC more than the Maximum Amount Due stated, as described in the Disclosure Statement., subject to the provisions of the Connecticut Small Loan Lending and Related Activities Act. Interest will be accrued on a per diem basis, based on the day USC is paid.
   c. **When Are My Payments Due?** I am required to make the payments (each, a "Payment") in the amounts and on the dates listed in the Disclosure Statement, unless deferred as provided below. On the Maturity Date, I am responsible to pay the Total Due minus any payments that I make to USC before the Maturity Date, if any.
   d. **Deferment of Payment.** The parties agree that, in the event that I do not make the first monthly installment within ten days after it is due, US Claims will unilaterally grant a deferral for any and all remaining installment obligations. In such an event, Interest will continue to accrue on all unpaid principal amounts during the deferment period until the earlier of USC being paid or the Maximum Amount Due being reached. The deferment period ends on the Maturity Date. If the monthly payments have been deferred until the Maturity Date, I will be responsible to pay the interest for all full months prior to the Maturity Date, and the last month will be treated as the current month for purposes of the calculation of interest due.
   e. **What Fees Are Charged in Connection with this Agreement?** There are no late payment or insufficient funds charges associated with this Agreement.
   f. **What is the Maturity Date?** "Maturity Date" means the date any portion of the Proceeds of the Litigation are paid to me, my Attorney, or a third party on either of our behalf (the "Date Proceeds Are Available"). I have the right to pay the Total Due or any portion thereof before the Maturity Date, in which case any amounts paid by me (short of repayment in full) will be deducted from the Total Due.
   g. **Prepayment.** I may prepay the Total Due in full or in part at any time without any prepayment charge. Early payment(s) will decrease the amount of interest I pay on this Agreement.
   h. **Payment to USC.** USC shall be paid immediately after the Date Proceeds Are Available immediately and, in no event, later than thirty (30) days after such date; the only disbursements that may be made prior to paying USC are statutory and priority liens, including for attorney's fees and reimbursable costs related to the Litigation (the "Permitted Liens"). Upon receipt, all Proceeds (less amounts paid for Permitted Liens) will be held in trust for USC until it is paid in full. In case of a dispute, I instruct my Attorney (and any future attorney) to hold the Proceeds in escrow in their trust account (less amounts paid for Permitted Liens) until the dispute is resolved. If USC receives a check with Proceeds and deposits it, it does not mean that USC has been paid in full or that I am released from paying USC in full. This provision is material to this Agreement.
   i. **Non-Recourse.** USC shall be paid only from the Proceeds of the Litigation and only to the extent that there are available Proceeds. If a court or other authority requires that the Proceeds be paid directly to me or to a third party or they rule that the Proceeds were not assignable to USC, I agree that I am responsible (or my heirs, estate executors, and personal representatives, as applicable) to pay USC, including from any funds or property other than the Proceeds. If I am not successful in the Litigation, or if no Proceeds result from the Litigation, I will not owe USC anything and USC will not seek any money directly from me, unless I have violated any material term of this Agreement or have committed fraud against USC. In the event that the Litigation is the subject of more than one case, action or cause (*e.g.*, a medical malpractice claim is litigated separately from an uninsured or underinsured motorist claim), then USC will be paid out of the Proceeds that I

Borrower's Initials (_____)

[CT-9/26/24]                                   Agreement (Page 1 of 5)

obtain from the first case, action or cause that results in monetary recovery, and if such recovery is not sufficient to pay USC in full, the balance shall be paid from the Proceeds that are obtained by me from subsequent cases, actions and/or causes.

2. **Transfer of Claims; No Attorney-Client Relationship.** I am not assigning any portion of any of my claims to USC. USC will not be involved in any way in the prosecution or potential settlement of the Litigation. USC has no rights, obligations or duties concerning the Litigation, or the collection of any settlement, award or judgment resulting from the Litigation. USC will have not be involved in my decisions or my attorney's decisions relating to the Litigation. USC is not engaged in the practice of law and are not serving as my counsel in the Litigation or with respect to any other matter. USC's sole obligation under this Agreement is to make the loan hereunder. Without limiting the foregoing, USC does not assume or have any responsibility or obligation of any kind whatsoever to me or my counsel in the Litigation or in connection with the Litigation, including any obligation to pay court costs or other expenses.

3. **Conditions Precedent.** The following conditions must be fully satisfied before any of USC's or my obligations become due under this Agreement: (a) USC receiving or completing background searches that it may require, in its discretion; (b) USC receiving the properly executed Agreement and its exhibits; (c) USC receiving the court documents it may require regarding the Litigation, as applicable; (d) USC's satisfaction that all representations are truthful and complete in all respects; and (e) any other condition that USC requires in writing.

4. **My Representations, Covenants and Warranties.** I represent, covenant, and warrant as follows:
   a. I have not taken any loans similar in nature to USC's nor have I assigned the Proceeds or portion thereof to anyone. **I will not hereafter (i) take any loans similar in nature to USC's, (ii) sell, assign, or grant any interest in or to the Proceeds to anyone, except for transfer by intestate due to my death, in which case my heirs, estate executors, and personal representatives will be bound by this Agreement, or (iii) permit the attachment of any lien in, to or upon the Proceeds similar in nature to USC's.**
   b. I have not relied on any representations or statements made by USC, its agents, or attorneys, in connection with this transaction or the tax or financial consequences of the transaction. I acknowledge that I have been advised to seek my independent tax, financial and legal advice with respect to this transaction.
   c. I am using the funds from this transaction for my economic necessities and not to support or aid in the Litigation.
   d. I have authorized USC or its agents to conduct such credit and background searches it may consider necessary in connection with this Agreement and shall cooperate fully with USC in this regard, including the execution of such other or further documents as USC may determine to be reasonably necessary, in its discretion.
   e. I will in good faith fully participate in the Litigation and cooperate with its prosecution to a successful conclusion.
   f. I am represented by my Attorney on a fee-contingent basis, and in no event will the fee exceed 40% of the Proceeds. I will not change the agreement with my Attorney in any way that would reduce or encumber USC's Property.
   g. I promise not to issue instructions to my Attorney that are inconsistent with the irrevocable instructions in Exhibit A. If I retain new counsel to represent me in the Litigation, I will notify USC within 72 hours of retaining new counsel, and will direct new counsel to comply with the terms of this Agreement and, if requested by USC to sign an Acknowledgment of Counsel substantially like the one in Exhibit A.
   h. I am personally responsible for payments made by USC on my behalf to any third-party payee identified in the Funding Instructions, per my written instructions.
   i. If, despite my waiver below, this loan is found to be usurious, I agree that the rate will be reduced to the maximum legal rate per the applicable law.

5. **WAIVERS.** I HEREBY RELEASE AND WAIVE THE RIGHT TO JURY TRIAL IN ANY COURT ACTION, IF THE ARBITRATION AGREEMENT IS INVALIDATED OR HELD UNENFORCEABLE IN WHOLE OR IN PART.

6. **AGREEMENT TO ARBITRATE.**
   a. **Agreement.** USC and I (collectively, the "Parties") agree that any and all controversies, claims, disputes, suits or causes of action of any nature (e.g., statutory, contractual, or sounding in tort) between the Parties (each, a "Claim") shall be settled by binding arbitration, including but not limited to those Claims arising out of or relating to (i) the Litigation, this Agreement, or any rider or addendum thereto, (ii) the relationships resulting therefrom, or (iii) the formation, validity and/or enforceability thereof, including but limited to the question of arbitrability of any such Claim. USC and I agree that this arbitration agreement binds and inures to the benefit of each of our respective heirs, executors, administrators, successors, agents (including attorneys) and assigns, as applicable, each of whom is considered a "Party" for purposes of this arbitration agreement. The Parties agree that this Agreement involves interstate commerce and is subject to the Federal Arbitration Act, including its standards for review.
   b. **Initiation.** Arbitration shall be initiated by a Party (in such capacity, the "Claimant") serving a written demand to the other Party (in such capacity, the "Respondent"). Arbitration must be initiated within a reasonable time after a Claim has accrued. The Arbitrator may not entertain a Claim if the applicable statute of limitations has expired. If a Party raises untimeliness of

Borrower's Initials (_____)

a Claim as a defense, the Arbitrator must resolve that issue prior to the hearing on the merits. Subject to restrictions under applicable law, if a Party fails to comply with this agreement to arbitrate, that Party shall be responsible for the fees and expenses (including attorneys' fees) incurred by the Party that seeks court intervention. In no event shall a party be required to pay any attorneys' fees that exceed fifteen percent (15%) of the unpaid debt under this Agreement at the time of arbitration.

c. **Administration.** The arbitration shall be privately administered by the Arbitrator and not by an organization and the Commercial Rules of the American Arbitration Association (the "AAA Rules") shall govern. Unless otherwise provided here, the arbitrator must follow the AAA Rules, except those regarding the administration of the process by the American Arbitration Association (the "AAA") or requiring documents to be filed with the AAA. In the case of inconsistencies between this Agreement and the AAA Rules, the terms of this Agreement shall govern.

d. **The Arbitrator.** The arbitration shall be held before a single arbitrator (the "Arbitrator"). The Claimant shall nominate the Arbitrator within 20 calendar days of the commencement of the arbitration, by sending the nominee's name and résumé to the Respondent via an Approved Method (as defined below). The Respondent has 7 calendar days of receipt of the nomination to send an objection in writing to Claimant. If the objection is not timely sent, the nominee shall be deemed appointed. If an objection is timely sent, the Arbitrator must be selected by agreement from a list of arbitrators obtained by the Claimant from the AAA, any state- or nation-wide organization that provides names of arbitrators, or any organization with arbitrators who are former judges (the "Organizations"). If the Parties are unable to agree upon an arbitrator within 15 calendar days after the arbitration is initiated, each Party will have 15 additional calendar days to select an appointing arbitrator from the Organizations. The appointing arbitrators shall select and appoint the Arbitrator from an Organization within 10 calendar days. If only one Party timely selects an appointing arbitrator, such appointing arbitrator shall be deemed the Arbitrator. Each Party is responsible to directly pay the fees for its appointing arbitrator and a prorated amount of the total fees of the Arbitrator fees as they become due. A Party may, in its discretion, pay 100% of all such fees, expenses and costs.

e. **Procedure.** The arbitration seat will be Connecticut. The hearing and any pre-hearing conferences shall be held telephonically or electronically, if requested by a Party, and in such case, it can be conducted from anywhere within the U.S. Each Party is entitled to submit one set of interrogatories, one request for production of documents, and one set of requests for admissions. Additional discovery shall be allowed only if agreed by the Parties or permitted by the Arbitrator. Discovery shall be conducted in accordance with the Federal Rules of Civil Procedure. The proceedings and all information disclosed during the arbitration shall be maintained confidential. The Arbitrator , and not any federal or state court or agency, shall have exclusive authority to resolve any dispute relating to the formation, interpretation, or enforceability of the Agreement or any rider or addendum thereto.

f. **Notices & Service.** Each Party agrees that service of the demand for arbitration shall be made via USPS Certified Mail or overnight courier service (each, an "Approved Method") to the address included for the Respondent in the Agreement, unless such Party has sent a written notice via an Approved Method designating a new address. Other documents and notices may be served via an Approved Method or to an email address provided or used by a Party within the context of the arbitration. The Parties waive personal service and consent to use of email service in the arbitration. Borrower agrees that service of the demand for arbitration may be made to the Attorney via an Approved Method, so long as a copy of the demand is also sent to the address included for Borrower in the Agreement.

g. **Other Terms.** No arbitration shall include (by consolidation, joinder or otherwise) a person or entity who is not a Party, except by written consent signed by both Parties and the person or entity sought to be joined, referring to this agreement and the specific Claim to be arbitrated. Any such consent shall not constitute consent to arbitration of other persons or entities or of a Claim not described in the consent. If any portion of this arbitration agreement be rendered invalid or unenforceable, in part or as to any particular Claim, the Parties agree that such invalid portion is severable and that the agreement to arbitrate shall be enforceable to the fullest extent of the law as to any portion that is not invalid or as to any Claim to which it may be applied.

h. **Award.** The Arbitrator shall resolve the arbitration pursuant to applicable law. The Arbitrator may issue a default award in the event a Party fails to appear or participate in the arbitration, so long as evidence of service of the demand to the Respondent under subparagraph (b) above is provided. The Arbitrator's award shall be final and conclusive and enforceable in any court of competent jurisdiction without any right of judicial review or appeal, which is hereby expressly waived. The award shall identify the substantially prevailing Party and award that Party reasonable attorneys' fees, expert fees, arbitrator fees and costs of arbitration. The award of attorney's fees is subject to the restrictions under Conn. Gen. Stat. § 42-150aa if the Claim involves money damages.

7. **Miscellaneous.** The Disclosure Statement, all exhibits, and any rider or addendum are incorporated by reference and made part of this Agreement. The terms of this Agreement apply to all addendums and riders. The parties agree that this Agreement: (a) is deemed entered into in the State of Florida and is governed by the laws of the State of Florida, without regard to its choice of law provisions, except as to those provisions of Florida law that are inconsistent with the applicable provisions of the Connecticut Small Loan Lending and Related Activities Act (Conn. Gen. Stat. §§ 36a-555 et al.); (b) constitutes the entire agreement and understanding of the parties with respect to the matters and transactions contemplated hereby and supersedes

Borrower's Initials (_____)

any and all prior agreements and understanding with respect thereto; (c) binds the parties and their heirs, successors, and assigns; and (d) may be assigned by USC and any such assign may and will rely on my representations. If any portion of this Agreement is rendered invalid or unenforceable, the Parties agree that such portion is severable, and that the Agreement shall be enforceable to the fullest extent of the law as to any portion that is not invalid.

8. **Notice Regarding Fight Against Terrorism and Money Laundering.** USC is committed to helping the government fight the funding of terrorism and money laundering activities. We do so by taking steps to ensure that we have information that verifies your identity. We will ask for your name, address, date of birth, copy of a photo identification, and other information that will allow us to identify you. We may also ask to see other documents.

9. **Cancellation. I have the right to cancel this Agreement without penalty or further obligation at any time prior to midnight of the fifth (5th) business day counting from the date I receive the Loan Amount from USC. In order for the cancellation to be effective, I must either: (a) return to USC the full amount of funds disbursed to you, by delivering in person the uncashed USC check at 4850 T-Rex Avenue, Suite 101, Boca Raton, FL 33431, within 5 business days of the disbursement of funds, or (b) mail to USC a notice of cancellation including the full amount of disbursed funds (in the form of the uncashed USC check, money order, or a registered, cashiers' or certified check), by insured, registered or certified U.S. mail, postmarked within five business days of the disbursement of funds to 4850 T-Rex Avenue, Suite 101, Boca Raton, FL 33431.**

If you have any questions about this Agreement or how to cancel this Agreement, you should consult with your attorney. You may also call with any questions: (800) 717-1000.

**DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT COMPLETELY OR IF IT CONTAINS ANY BLANK SPACES. BEFORE YOU SIGN THIS CONTRACT, YOU SHOULD OBTAIN THE ADVICE OF YOUR ATTORNEY. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS CONTRACT.**

BORROWER:

_____
Abigail Singletary-Rodney
Date: _____

LENDER: US CLAIMS CONNECTICUT, LLC
By:     _____
Name:   _____

Title:   Authorized Representative

Date:   _____

Borrower's Initials (_____)

## EXHIBIT A
### IRREVOCABLE LETTER OF INSTRUCTION TO COUNSEL

12/26/2024

Alexander A Glovich, Esquire
Rudikh & Associates, LLC
223 Highway 18, Suite 204
East Brunswick, NJ  08816.

Re: Abigail Singletary-Rodney  v. Frank Stabile (the "Litigation")

Dear Alexander A Glovich, Esquire:

This letter, along with a copy of the "US Claims Loan Agreement" (the "Agreement"), will confirm that I have taken a loan from US Claims Connecticut, LLC ("USC") secured by a lien in the proceeds (the "Proceeds") from any judgment or settlement of the case in which you represent me (the "Claim" or "Litigation"). **I irrevocably instruct you and any future attorney I may have to honor the Agreement and: (1)** cause delivery of all Proceeds to your attorney trust account and, before disbursing any Proceeds, contact USC at 877-872-5246 to confirm the amount due; (2) upon receipt of any Proceeds and after deduction of Permitted Liens (defined in the Agreement), pay USC in full via mail at: US Claims , P.O. Box 789867, Philadelphia, PA 19178-9867; (3) upon request by USC (for internal purposes only), provide USC the information regarding the Claim that is reasonably necessary for it to make an assessment of its merits and final distribution statement for the settlement or judgment; (4) keep USC informed of developments in the Claim; (5) promptly notify USC if there are any other loans of the same nature as USC's or liens on the Proceeds or if you cease representing me; (6) cooperate with USC in enforcing its rights under the Agreement. **DO NOT DISBURSE ANY PROCEEDS TO ME OR ANYONE ELSE WITHOUT FIRST PAYING USC IN FULL.**

Very truly yours,

_____

Abigail Singletary-Rodney

### COUNSEL ACKNOWLEDGMENT

I, Alexander A Glovich, Esquire individually and as an authorized representative of Rudikh & Associates, LLC ("I" or "me"), acknowledge that you ("you" or "Client"), have taken a loan from USC and granted a security interest and lien on the Proceeds. I will follow your irrevocable instructions and will honor the terms of the Agreement and any rider or addendum you execute. I know of no loan of the same nature as USC's or other lien or beneficiaries in the Litigation that has not been disclosed in writing to USC and acknowledge that the Agreement prohibits you from taking loans or receiving advances to be paid from the Proceeds, or creating liens similar in nature to USC's. I will take the necessary steps so that the Proceeds are sent to my trust account or a settlement fund for disbursement therefrom. Upon receipt of the Proceeds, I will immediately contact USC and, after making the deductions for Permitted Liens (defined in the Agreement), I will forward all amounts due to USC, before any Proceeds are distributed to you or anyone else, to: US Claims , P.O. Box 789867, Philadelphia, PA 19178-9867. In the event of a dispute with USC, the only disbursements from the Proceeds will be for Permitted Liens; the remainder of the Proceeds will be held in my trust account until such dispute is resolved, and any such dispute will be subject to arbitration under Section 6 of the Agreement. I will promptly notify USC if the Proceeds are subject to probate, surrogacy, or other similar proceedings, to allow USC the opportunity to participate in such proceedings. If there is a settlement fund administrator, I will notify such administrator of USC's claim.

I represent that: (a) I am the attorney of record in the Claim; (b) the Claim is pending and in active status; (c) there are no appeals or pending motions (except as disclosed to USC) which, if adversely decided, could reasonably be expected to have an adverse effect on the Claim or my Client's ability to receive the Proceeds; (d) the Claim is being vigorously prosecuted as to both liability and damages, although there is no guarantee that my Client will be successful or will recover sufficiently to pay USC in whole or in part; and (e) neither USC or its affiliates solicited or otherwise encouraged the institution of the Claim. I certify that I received a copy of and reviewed the Agreement, that I explained to my Client its terms, including the annualized rate of return applied to calculate the amount to be paid to USC, and that my Client's representations in the Agreement are true and accurate, to the best of my knowledge. This acknowledgement is a material part of the Agreement.

By: Alexander A Glovich, Esquire
Rudikh & Associates, LLC
Dated: _____

## US CLAIMS -- FUNDING INSTRUCTIONS

| | |
|---|---|
| Amount Financed | $2,500.00 |
| If applicable, payments to other third parties on my behalf (see below for details) | $0.00 |
| *Net amount to be sent to me* | $2,500.00 |

**INSTRUCTIONS AND AUTHORIZATIONS**: By signing below, I/we hereby expressly instruct and authorize US Claims to pay, on my/our behalf, the Prior Funding Payoff (if any is listed above) and any third parties listed below ("Third Party Payees") and to charge me the payment fee. I/we agree that such fees and any amounts paid pursuant to my/our instructions shall be deducted from the Purchase Price to be paid to me/us.

### PAYMENT OPTIONS (Check only one)

| Check One | Payment Method | Expected Delivery* | Max Amount | Instructions |
|---|---|---|---|---|
| ☐ | 1. Visa Card Debit Card | Next Business Day | $20,000.00 | • Need physical mailing address (fill out Box A below). |
| ☐ | 2. Wire Transfer | Same Business Day (before 5pm EST) | Unlimited | • Need wire Routing Number and Bank Account Number (fill out Box B below). • Account must be in seller's/borrower's name. |
| ☐ | 3. ACH Transfer | Next Business Day (before 5pm EST) or Same Day (see Instructions for same-day requirements) | Unlimited | • Need ACH Routing Number and Bank Account Number (fill out Box B below). • Account must be in seller's/borrower's name. • Funds may be transferred the same day if all conditions for funding are met by 11 am EST. |
| ☐ | 4. Cash Pickup | Same Day (before 5pm EST) | $3,000.00 | • Two forms of ID required at pickup (Passport, Driver's License or state-issued ID) |
| ☐ | 5. Overnight Check | Next Business Day | Unlimited | • Need physical mailing address (fill out Box A below). (No P.O. Box) • Check to be issued in name of seller/borrower. |
| ☐ | 6. eCheck. | Same Day (before 5pm EST) | Unlimited | • Need email address (fill out Box C below) • Recipient must print check to deposit • Check to be issued in name of seller/borrower. |

\* Signed contracts received after 3pm may be processed the next business day. **Call for details.**

### ADDITIONAL INFORMATION REQUIRED (Pick one depending on payment option)

| A. | Physical Mailing Address for Option 1 (Visa Debit Card) or Option 5 (Check) | B. | Bank Information for Option 2 (Wire transfer) or Option 3 (ACH) |
|---|---|---|---|
| | Address Line 1: _____ Address Line 2: _____ City, State and Zip Code: _____ Phone # _____ | | Routing Number (ACH or Wire): _____ Account Number: _____ Name on the Account: _____ Bank Name: _____ Bank City and State _____ For Further Credit (FFC): _____ |

| C. | Email Address for Option 6 (eCheck) email address: _____ |
|---|---|

☐ Attorney Email Address          ☐ My Email Address          ☐ Other

| THIRD PARTY PAYEES | Amount |
|---|---|
| N/A | N/A |

BORROWER:

_____
Abigail Singletary-Rodney
Date: _____

 USCLAIMS

## US CLAIMS PRIVACY POLICY

Because your privacy is important to US Claims and its affiliates (collectively "we," "us," or "USC"), we have developed this Privacy Policy (the "Policy") to inform you about USC's privacy practices. This Policy covers how we collect, use, disclose, transfer, and store your information. The examples in this Policy are illustrative only and are not intended to be exhaustive. This Policy takes effect June 1, 2020. The procedures in this Policy protect the privacy of your information, whether you are a current or former customer/seller of USC.

**Our Privacy Pledge.** In order to complete transactions with you in a prompt, efficient and professional manner, we depend on certain information. In gathering and maintaining this information, we pledge to:

- Collect the information needed to process, complete and service the transaction you have requested.
- Take steps to prevent unauthorized access to your information.
- Not disclose health information to third parties without your consent.
- Maintain control over the confidentiality of your personal information.
- Update you on our privacy practices if and when they change.

**Categories of Information We May Collect.** In the normal course of business, we may collect non-public information about you from various sources. The types of personal information we collect and share depend on the context of your interactions you have with us. This information can include: Social Security Number, structured settlement balances, transaction history, contact information (e.g.: name, address, telephone number(s), email), demographic data (age, gender, language), bank account data (necessary to pay you if you complete a sale to us), insurance or annuity policy information, credit history, reports from the American Legal Finance Association or the National Association of Settlement Purchasers; information contained in public records; and/or other information and documents you provide to us or authorize us to obtain.

**How Do We Collect Your Personal Information?** We collect your personal information, for example, when you: contact us via telephone, email, or through social media to request information; submit an application with us; give us your contact information via telephone, email, social media, or through a webform; or otherwise provide information to us or authorize us to obtain it. We also collect information from third party sources, including data brokers, service providers, and partners who engage in marketing activities, and publicly-available sources such as open government databases or other data in the public domain.

**Reasons We Can Share Your Information.** We share your personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Below, we list the primary reasons we share your personal information; the reasons we reserve the right to share; and whether you can limit this sharing.

| Purpose | Does USC Reserve the Right to Share | Can You Limit This Sharing |
|---|---|---|
| For our everyday business purposes— such as to process your transactions with us, to fund or audit your transactions, to maintain/service your transaction(s), respond to court orders and legal investigations, or report to credit bureaus. | Yes | No |
| For us to market to you. | Yes | Yes |
| For joint marketing with other companies | Yes | Yes |
| For our everyday business purposes— information related to your transactions and experiences | Yes | No |
| For our Affiliates' everyday business purposes— information about your creditworthiness | Yes | Yes |
| For non-affiliates to market to you | Yes | Yes |

Your personal information may also be used or shared:

- To establish or exercise our legal rights or defend against legal claims.
- To conduct background searches in connection with the transaction you have requested.
- To postal and email delivery companies.
- In connection with a proposed or actual sale, merger, transfer, exchange or consolidation of any portion of our business.
- To comply with legal process.
- To secure services and advice from our attorneys, accountants and auditors.
- As allowed by law, as necessary to effect, process, administer, service or enforce a transaction you have requested.
- To firms that perform services on our behalf including, without limitation, auditing, consulting, and marketing.
- To respond to a subpoena, to prevent fraud, or to comply with an inquiry by a government agency.
- To such firms that assist us in processing, funding and completing the transaction you have requested and/or who may assist us or attempt to assist us to re-finance or sell/resell the transactions that are completed by us.
- We will not share your health information with third parties for marketing purposes without your consent.

**Who is providing this notice?** This notice is provided by USC.

**How Can You Limit the Sharing of Your Information?** To limit our sharing of your information, please call 1-800-717-1000 or write to us at: US Claims 4850 T-Rex Avenue, Suite 101, Boca Raton, FL 33431, providing us your contact information. If we have no prior relationship with you, we can begin sharing your information 30 days from the date we send you this notice by mail. When you are no longer our customer, we will continue to share your information as described in this Policy. However, you can contact us at any time to limit our sharing. Federal law gives you the right to limit only: (a) sharing for everyday business purposes—information about your creditworthiness (b) our using your

information to market to you and (c) sharing for third parties to market to you. State laws and individual companies may give you additional rights to limit sharing.

**California Residents.** USC collects information that you provide to us or that we learn about you, as described in this Privacy Policy. California residents who interact with USC may request certain information.

- You can ask us what personal information we have about you, including a list of categories of your personal information that we have sold and a list of categories of your personal information that we have shared with another company for a business purpose. If you make this request, we will return to you (to the extent required by law):
  - The categories of personal information we have collected about you.
  - The categories of sources from which we collect your personal information.
  - The business or commercial purpose for collecting or selling your personal information.
  - The categories of third parties with whom we share personal information.
  - The specific pieces of personal information we have collected about you.
  - A list of categories of personal information that we have sold, along with the category of any other company we sold it to. Any of the categories of personal information that we collect could be included in a sale to other companies, including those within our corporate family. If we have not sold your personal information, we will inform you of that fact.
  - A list of categories of personal information that we have disclosed for a business purpose, along with the category of any other company we shared it with.
- You can ask us to provide you with this information within a twelve-month period. When you make this request, the information provided may be limited to personal information we collected about you in the previous 12 months.
- You can ask us to delete your personal information. Once we receive a request, we will delete such information (to the extent required by law) we hold about you as of the date of your request from our records and direct any service providers to do the same.
- You have the right to ask that we stop selling your personal information. USC does not sell your personal information to third parties for monetary consideration. However, under some circumstances, a transfer of personal information to a third party, or within our affiliates and subsidiaries, may be considered a "sale" under California law. If you submit a request to stop selling your personal information, we will stop making such transfers to the extent required by California law.
- We have a nondiscrimination policy. USC will not discriminate against you for exercising your rights. This generally means we will not deny doing business with you or offer you a different purchase price or rates.

To exercise the California privacy rights to request or delete information as described above, please email privacy@usclaims.com or call (877) 872-5246. You may also write to our legal department with any questions or comments about this Policy or about how we handle your personal information at: Legal – USC Privacy Policy, 4850 T-Rex Avenue, Suite 101, Boca Raton, FL 33431.

**Nevada Residents.** We are providing you this notice pursuant to state law. You may be placed on our internal Do Not Call List by contacting us. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number- 702.486.3132; email: BCPINFO@ag.state.nv.us.

**Vermont Residents.** In accordance with Vermont law, we will not share information we collect about Vermont residents with companies that are not affiliated to us for the purpose of direct marketing, except with your consent or as permitted by law, such as is necessary to service, audit or fund your transactions. We might share your name and contact information with third parties that assist us in our direct marketing efforts.

**Safeguarding Your Information.** To protect your personal information from unauthorized access and use, we use administrative, physical, and technical security measures. These measures include computer safeguards and secured files and buildings. Remember, however, that no method of transmission over the Internet, or method of electronic storage, is 100% secure. While the computers/servers in which we store your Personal Information are kept in a secure environment, we cannot guarantee absolute security.

**Health Information Practices.** We sometimes must collect confidential health and medical information in connection with a transaction you have requested. We do not use or share confidential health and medical information internally or externally, for any purpose except the following: to process your transaction(s); maintain/service your transactions(s); respond to court orders and legal investigations; assisting you in selling an insurance policy; administering any such policy, or claim(s) relating thereto; with non-affiliated funders, investors, lenders or their respective attorneys or other representatives who are assisting us in processing, funding and completing the transaction you have requested and/or who may assist us or attempt to assist us to re-finance or sell/resell the transactions that are completed by us or report to credit bureaus, or as you otherwise authorize via your prior, express, written consent. We will not share your health information with third parties for marketing purposes without your prior, express, written consent.

**Modifications.** We may modify this Privacy Policy. Notice of such changes will be provided through our websites or through contractual documents you may receive in the future. Your continued use of the websites or your execution of contractual documents means you are consenting to the updated Privacy Policy.

**Questions or Complaints?** If you have any questions or complaints regarding this Policy or the handling of your information, or if you would like a copy of this Policy, call us at 1-800-717-1000 or write to us at: US Claims, 1625 S. Congress Ave., Suite 200B, Delray Beach, FL 33445.

Signature: _Gregory Rodney (Dec 26, 2024 16:23 EST)_

Email: tabbyeddission41@yahoo.com

Signature: _____

Email: alexglovichesq@gmail.com